# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TOUA VANG,**

**Plaintiff,**

v.                                    **Case No. 24-cv-609**

**NATASHA FRANCESCHI, et al.,**

**Defendants.**

# ORDER

On May 17, 2024, Plaintiff Toua Vang filed a complaint against defendants U.S. Secretary of State Antony Blinken and Deputy Chief of Mission of the U.S. Embassy in Tunisia, Natasha Franceschi. (ECF No. 1.) Vang seeks to compel the Defendants to adjudicate his fiancée's visa application. (ECF No. 1, ¶ 1.) Vang brings the following claims: unreasonable delay under the Administrative Procedure Act, mandamus relief under the Mandamus Act, and Due Process violations under the Fifth Amendment. (*Id.*, ¶¶ 25-41.) On July 23, 2023, Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 8.)

All parties have consented to the jurisdiction of this court. (ECF Nos. 5, 6.) The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. The motion is fully briefed and ready for resolution. (ECF Nos. 9, 10, 11.)

1. **Legal Background**

The Immigration and Nationality Act ("INA") governs the admission of noncitizens into the United States. 8 U.S.C. § 1101, *et seq*. A U.S. citizen seeking to bring a noncitizen fiancé(e) to the United States to marry must file a Form I-129 petition for an alien fiancé(e) visa with the United States Citizenship and Immigration Service ("USCIS"). 8 U.S.C. § 1101(a)(15)(K)(i); 8 U.S.C. § 1184(d); 22 C.F.R. § 41.81(a); 8 C.F.R. § 214.2(k). The visa applicant bears the burden of establishing her eligibility to receive the visa. 8 U.S.C. § 1361.

Once the USCIS approves the Form I-129 petition, it will transfer the case to the beneficiary's Department of State's National Visa Center for pre-processing. U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited September 30, 2024). The National Visa Center will ensure the application is documentarily complete and then schedule the beneficiary for an interview with a consular officer in the country where the beneficiary is located. *Id.*

The beneficiary then attends an in-person interview with the consular officer. 8 U.S.C. § 1202(h). The beneficiary must bring required documents to the interview, including photographs and evidence of a relationship with the U.S. citizen fiancé(e). U.S. Dep't of State, Bureau of Consular Affairs, *Nonimmigrant Visa for a Fianc(é)e (K-1) – Required Documentation*, https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html#1 (last visited September 30, 2024). The consular officer will review and adjudicate the beneficiary's application. 8 U.S.C. § 1202(d); 8 U.S.C. § 1201(a)(1).

When the application is complete, the consular officer must either issue a visa or refuse the application. 22 C.F.R. § 41.121(a). The consular officer must base a refusal on legal grounds. 22 C.F.R. § 41.121(a). One ground for refusal is set forth in INA section 221(g), which states that refusal is necessary if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa" or that "the application fails to comply with the provisions" of the INA or the State Department's regulations. 8 U.S.C. § 1201(g); 22 C.F.R. § 41.121(a) ("Nonimmigrant visa refusals must be based on legal grounds, such as one or more provisions of … INA 221(g) … or other applicable law.").

When the consular officer refuses an application, he or she must inform the intended beneficiary of the grounds of ineligibility and whether there is a mechanism to overcome the refusal. 22 C.F.R. § 41.121(b); 8 C.F.R. § 214.2(k)(4).

If the consular officer refuses the application but requests additional information, the applicant has a year from the refusal date to submit additional information. U.S. Dep't of State, Bureau of Consular Affairs, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited September 30, 2024); *see also* 22 C.F.R. §§ 41.121(c)-(d), 42.81(c)-(e) ("If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."). If the applicant "present[s] additional evidence to attempt to overcome [the] prior refusal, [the consular officer] should re-open and re-adjudicate the case[,] … determining whether the applicant is eligible for a visa." Dep't of State, 9 Foreign Affairs Manual ("FAM") 306.2-2(A).

### 2. Factual Background

The court accepts Vang's well-pled allegations as true for purposes of deciding a motion to dismiss and draws all reasonable inferences in Vang's favor. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). The court also considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Concepts Design Furniture, Inc. v. Fisherbroyles, LLP*, No. 22-2303, 2023 WL 2728816, at *1 (7th Cir. Mar. 31, 2023) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Vang is a U.S. citizen engaged to Kouloud Bayouli, a resident of Tunisia. (ECF No. 1, ¶¶ 10, 16-19.) The couple has dated for five years and want to live together in the United States and get married. (*Id.*, ¶¶ 7, 18.) In February of 2022 Vang filed a USCIS petition for his fiancée to join him in the United States. (*Id.*, ¶¶ 16, 18.) The USCIS approved the petition in May of 2023. (*Id.*, ¶ 17.)

On October 4, 2023, Bayouli went to the U.S. Embassy in Tunisia for her interview with a consular officer. (ECF No. 1, ¶ 19.) She brought photo albums for the interview but was told by a security guard that she could not bring the photos into the interview. (*Id.*, ¶ 20.) At the end of the interview with the consular officer Bayouli received a letter stating that her application was refused under INA section 221(g). (*Id.*, ¶ 21; ECF No. 10-2.) Although the letter cited section 221(g) as the basis for the refusal of Bayouli's visa, it did not say whether the visa was being refused because Bayouli was ineligible to receive a visa or because her application failed to comply with the provisions of the INA or the State Department's regulations. Rather, the letter simply contained the following statement:

> Your application has been refused under Section 221(g) of the Immigration and Nationality Act. *We will continue processing your application* once we receive the requested information and/or we complete the required administrative processing.

(ECF No. 10-2) (emphasis added.)[1] The letter requested Bayouli provide the following documents: "evidence of relationship: chat + photos." (ECF No. 1, ¶ 21; ECF No. 10-2.) It stated the "NEXT STEPS" were to email the requested documents to "TunisIV@state.gov". (ECF No. 1, ¶ 21; ECF No. 10-2.) Later that same day, Bayouli sent the requested photos and texts. (ECF No. 1, ¶ 22.)

At some point (it is unclear when), the State Department's Consular Electronic Application Center website updated Bayouli's application status to "Refused," with the following explanation:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is need.

Search results for "TNS2023700001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited September 30, 2024).[2]

The U.S. Department of State's website on visas has a page outlining the interview process for the U.S. Embassy in Tunisia. U.S. Dep't of State, Bureau of Consular Affairs,

---

[1] This document is central to the complaint and referred to in it (ECF No. 1, ¶ 21), and is therefore properly considered in a motion to dismiss. *See Concepts Design Furniture, Inc.*, 2023 WL 2728816, at *1.

[2] The court takes judicial notice of the government websites the Defendants cited and requested judicial notice of in their brief. (ECF No. 9 at 3 n.1); *see* Fed. R. Evid. 201; *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

*U.S. Embassy Tunis, Tunisia - TNS*, https://travel.state.gov/content/travel/en/us-visas/Supplements/Supplements_by_Post/TNS-Tunis.html#interview_guidelines (last visited September 30, 2024). It explains Bayouli's situation this way:

> After Your Visa Interview … If more information is needed
>
> Sometimes a consular officer is unable to make a decision on a visa application because he/she needs to review additional documents or the case requires further administrative processing. *When additional documents are requested*, the consular officer will give you a refusal letter that asks you to submit additional documents. The letter will include instructions on how to send those documents to the embassy.
>
> Administrative processing takes additional time after the interview. Most administrative processing is resolved within 60 days. However, the timing varies based on the circumstances of each case. Before inquiring about the status of administrative processing, please wait **at least 60 days** after your interview.

*Id.* (emphasis in original.)

Since Bayouli's October 4 interview, Vang and Bayouli have repeatedly inquired about the status of the visa application. (ECF No. 1, ¶ 24.) They have received no response or further adjudication of their case. (*Id.*)

### 3. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject-matter jurisdiction. For purposes of a motion to dismiss under Rule 12(b)(1), the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Scanlan v. Eisenberg*, 669 F.3d 838, 841

(7th Cir. 2012). However the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6), "a [petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 4. Analysis

In moving to dismiss Vang's complaint, Defendants argue that Vang lacks standing to sue the Secretary of State, Antony Blinken, and that the Court thus lacks subject matter jurisdiction over him. (ECF No. 8 at 1.) Defendants also argue that the doctrine of consular nonreviewability bars this Court's review of the consular officer's visa application decision. (*Id.*) In the alternative, Defendants contend the complaint fails

to allege a claim for a writ of mandamus or relief under the Administrative Procedure Act. (*Id*.) Finally, Defendants argue Vang cannot state a claim under the Due Process clause because he lacks a protected interest. (*Id*.)

### 4.1 Standing to sue the Secretary of State

Defendants argue that U.S. Secretary of State Antony Blinken should be dismissed from this case because Vang lacks standing to sue him. (ECF No. 9 at 15) (all citations reflect the ECF pagination.) Defendants frame Vang's requested relief as ordering Secretary Blinken to "re-adjudicate" Bayouli's visa application. (*Id*.) Defendants argue Secretary Blinken has no authority over whether to issue or grant a visa and therefore cannot provide Vang with his requested relief. (*Id*.)

Vang claims that consular officers have a nondiscretionary duty to review and adjudicate visa applications, that the officer has not done so here, and requests the Court compel Defendants to resolve the visa application. (ECF No. 1 at 6.) Vang contends he seeks a court order directing Secretary Blinken to order his subordinates, the consular officers, to timely adjudicate Bayouli's visa. (ECF No. 10 at 10.)

The head of an agency is ordinarily the appropriate party to defend against a requested court order. *See* 5 U.S.C. § 702. The Secretary of State exercises general oversight regarding administration and enforcement of immigration laws. 8 U.S.C. § 1104(a). But Congress explicitly excluded from the Secretary of State's powers the

authority over "the powers, duties, and functions conferred upon the consular officers *relating to the granting or refusal of visas.*" *Id.* (emphasis added).

Both parties cite conflicting extra-circuit authority on a plaintiff's standing to sue the Secretary of State in matters such as this. (ECF No. 9 at 16; ECF No. 10 at 10-11.) It is undisputed that the Secretary of State cannot be ordered to adjudicate a visa or direct its outcome. But authority to determine a visa's outcome "is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022); *Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024). Nothing "precludes the Secretary—who oversees the State Department—from directing consular officers 'to conclude … matters presented to them' 'within a reasonable time.'" *Al-Gharawy*, 617 F. Supp. 3d at 10.

In fact, the Secretary of State has circulated directives to consular officers regarding timing of adjudicating visas as part of his general oversight role. *See* Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021) ("[P]ost should strive to process immediate relative cases and nonimmigrant K visa applications of fiancés of U.S. citizens within 30 days…."). Because Vang merely seeks an order directing Secretary Blinken to order his subordinates, the consular officers, to timely adjudicate Bayouli's visa application, the Defendants' motion to dismiss with respect to the Secretary of State (ECF No. 8 at 1) is denied.

### 4.2 Consular Nonreviewability

Consular officers have exclusive authority to review visa applications. 8 U.S.C. §§ 1104(a); 1201(a). "[T]he general rule [is] that decisions 'to issue or withhold a visa' are not reviewable in court 'unless Congress says otherwise.'" *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Dep't of State v. Munoz*, 114 S. Ct. 1812, 1820 (2024). "The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus … the federal courts cannot review those decisions." *Munoz*, 114 S. Ct. at 1820.

The consular nonreviewability doctrine applies "even to suits where a plaintiff seeks to challenge a visa decision indirectly." *Matushkina*, 877 F.3d at 294-95. "Courts are not required to take a plaintiff's word that she is not challenging the visa denial." *Id.* "Plaintiffs cannot shield their claims from the doctrine of consular nonreviewability by 'repackaging their substantive complaints as procedural objections.'" *Pak v. Biden*, 91 F.4th 896, 901 (7th Cir. 2024) (quoting *Doe v. McAleenan*, 926 F.3d 910, 911 (7th Cir. 2019)) (finding the plaintiffs' claims were an "'indirect attack' on the visa denial" because the claims could not "be divorced from a substantive challenge to the Executive's discretionary decision").

The consular nonreviewability doctrine is a recognition that "Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Pak*,

91 F.4th at 900 (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019)). However, the doctrine does not necessarily apply to procedural issues of unreasonable delay. "In contrast to the inherently political nature of decisions regarding who should (and should not) be admitted into the United States, the question whether a consular officer has engaged in unreasonable delay in considering an application is not 'an area in which … issues are inappropriate for judicial determination.'" *Al-Gharawy*, 617 F. Supp. 3d at 12-13 (quoting *Saavedra Bruno*, 197 F.3d at 1160). Where "an agency fail[s] to take a discrete agency action that it is required to take," "a court can compel the agency to act" under § 706(1), even where the court "has no power to specify what the action must be." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004) (emphasis omitted); *cf. Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) (noting the government's argument "confus[ed] its discretion over how it resolves the applications … with its discretion over whether it resolves them").

Vang seeks to compel agency action based on the consular officer's alleged unreasonable delay in resolving Bayouli's visa application. (ECF No. 1 at 6-7); 8 U.S.C. § 1202(d); 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) ("The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed."). Defendants argue that a consular officer's section 221(g) refusal is a final decision to deny the visa and bars the court from reviewing Vang's unreasonable delay claims. (ECF No. 9 at 22.) Vang responds

that the section 221(g) refusal of Bayouli's visa application was for administrative processing and is not a final decision, and thus the consular nonreviewability doctrine does not bar judicial review. (ECF No. 10 at 11.)

Federal courts are divided on the application of consular nonreviewability to allegedly non-final visa decisions. *Compare, e.g.*, *Ebrahimi v. Blinken*, No. 23-cv-3867, 2024 WL 2020038, at *8 (N.D. Ill. May 3, 2024) (consular nonreviewability does not apply to section 221(g) refusal), *and Al-Gharawy*, 617 F. Supp. 3d at 12 (same), *and Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (finding a letter citing section 221(g) did not constitute a refusal), *with, e.g.*, *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551, at *10 (D.D.C. May 9, 2024) (section 221(g) refusals are final), *and Li v. Chertoff*, No. 6-cv-13679, 2007 WL 54197, at *1 (S.D.N.Y. Feb. 16, 2007) (finding consular nonreviewability applies to claims seeking to compel adjudication of delayed visas). But where a consular officer has refused a visa application under section 221(g) and provided "assurances of further adjudication … courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply." *Ebrahimi*, 2024 WL 2020038, at *7.

The Immigration and Nationality Act regulations require a consular officer to "issue the visa [or] refuse the visa." 22 C.F.R. § 41.121(a). The refusal must be on legal grounds, which can include a section 221(g) refusal. *Id.* The refusal procedure prescribes that a consular officer refusing a fiancé(e) visa must notify the petitioner of the decision and inform them of the grounds of ineligibility and whether there is a mechanism to

overcome the refusal. *Id.* § 41.121(b); 8 C.F.R. § 214.2(k)(4). A consular officer is also under the general direction to "proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

Section 221(g) refusals often present a unique problem whereby the visa is labeled "refused" but the refusal exists in only form and not substance. A consular officer will refuse a visa under section 221(g) where "it appears to the consular officer that the alien is ineligible to receive a visa" or "it appears the applicant failed to comply" with the Immigration and Nationality Act. 8 U.S.C. § 1201(g). Often, after the applicant's interview, the consular officer will hand the applicant a letter explaining that her application has been refused—or even "temporarily refused"—under section 221(g) for administrative processing and that the embassy will provide another adjudication once processing is complete. *See, e.g.*, *Ebrahimi*, 2024 WL 2020038, at *2; *Zadeh v. Blinken*, No. 23-cv-3721, 2024 WL 2708324, at *2 (N.D. Ill. May 29, 2024); *Al-Gharawy*, 617 F. Supp. 3d at 6; *Lee*, 2024 WL 639635, at *2; *Khazaei v. Blinken*, No. 23-1419, 2023 WL 6065095, at *2 (D.D.C. Sept. 18, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 96 (D.D.C. 2020); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 284-85 (D.D.C. 2016); *see also Ebrahimi*, 2024 WL 2020038, at *5 (collecting cases). These "refusals" are often followed by a visa being issued, although sometimes the applicants are left waiting indefinitely for a response.

The cases Defendants cite to support their position that the consular officer's section 221(g) refusal was final do not address this common scenario. *Al Naham v. U.S.*

*Dep't of State*, No. 14-cv-9974, 2015 WL 3457448, at *1 (S.D.N.Y. June 1, 2015) (concerning scheduling plaintiffs' interviews, not concerning a refusal); *Sesay v. United States*, 984 F.3d 312, 314 (4th Cir. 2021) (concerning a section 221(g) refusal for an applicant who lied about her age, offered a fake passport, and never provided the requested documents to confirm her age); *Baaghil v. Miller*, 1 F.4th 427, 431 (6th Cir. 2021) (concerning a section 221(g) refusal for applicants who consular officials were suspicious "were not who they said they were" and whose applications were sent to the USCIS for revocation).

Cases that do address section 221(g) refusals that are "followed by assurances of further adjudication … overwhelmingly conclude that the doctrine of consular nonreviewability does not apply." *Ebrahimi*, 2024 WL 2020038, at *7. Several courts within the Seventh Circuit have noted as much. *See id.*; *Zadeh*, 2024 WL 2708324, at *4-5; *cf. Al Khader v. Blinken*, No. 18-cv-1355, 2021 WL 678701, at *1 (N.D. Ill. Feb. 22, 2021) ("[Procedural] relief … might be available without running afoul of the consular nonreviewability doctrine."). When the State Department uses language such as "you *will* receive another adjudication once such [administrative] processing is complete," the "use of 'will' … all but guarantees … another adjudication…." *Barazandeh v. U.S. Dep't of State*, No. 23-1581, 2024 WL 341166, at *5 (D.D.C. Jan. 30, 2024) (emphasis in original). "[T]he [court's] focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine." *Vulupala*, 438 F. Supp. 3d

at 98. The word "refusal" is "not a get-out-of-review-free card." *Al-Gharawy*, 617 F. Supp. 3d at 16. "At the motion to dismiss stage, the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" *Al-Gharawy*, 617 F. Supp. 3d at 16 (alteration in original) (quoting *Vulupala*, 483 F. Supp. 3d at 98).

As in the cases cited above where courts found section 221(g) refusals were not final, although Bayouli was told her application was refused, she was promised further adjudication once she provided the requested information. (ECF No. 10-2.) That same day Bayouli sent the requested information—text and photo evidence of her relationship with Vang—but has received no update in the one year since. (ECF No. 1, ¶¶ 21, 24.)

Furthermore, Bayouli never received the process that coincides with a visa refusal: she never received a notice of the refusal stating the mechanisms to overcome it. *See* 22 C.F.R. § 41.121(b) (refusal procedure); 8 C.F.R. § 214.2(k)(4) (same); *Patel*, 134 F.3d at 932 (finding the lack of a refusal stating available relief pursuant to refusal procedure indicated there was no final refusal under section 221(g)). This further suggests the lack of finality of the "refusal" letter.

The embassy's webpage also expresses lack of finality, explaining that, after an interview:

> Sometimes a consular officer is **unable to make a decision** on a visa application because he/she needs to review additional documents or the

case requires further administrative processing. ***When additional documents are requested*, the consular officer will give you a refusal letter that asks you to submit additional documents.** The letter will include instructions on how to send those documents to the embassy.

U.S. Dep't of State, Bureau of Consular Affairs, *U.S. Embassy Tunis, Tunisia - TNS*, https://travel.state.gov/content/travel/en/us-visas/Supplements/Supplements_by_Post/TNS-Tunis.html#interview_guidelines (last visited September 30, 2024) (bold added). The government's websites further support Vang's contention that the refusal was not final: the consular officer was "unable to make a decision" on Bayouli's visa application until the officer reviewed the requested documents. Bayouli sent the documents, and once she did so the agency was to "continue processing [her] application" (ECF No. 10-2) and she "[would] receive another adjudication once [the] processing [was] complete." Search results for "TNS2023700001," U.S. Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited September 30, 2024). Vang and Bayouli have not received such adjudication. (ECF No. 1, ¶ 24.) "[T]hat ongoing adjudication means that no final decision has been made that would implicate the doctrine of consular nonreviewability." *Ebrahimi*, 2024 WL 2020038 at *7.

Defendants point out that agency policy states "[t]here is no such thing as an informal refusal or a pending case once a formal application has been made." (ECF No. 11 at 6); Dep't of State, 9 FAM § 504.11-2(A). The agency actions Vang alleges, however, are inconsistent with agency policy on refusals. *See* Dep't of State, 9 FAM 504.1-3 ("You

cannot temporarily refuse, suspend, or hold the visa for future action. If you refuse the visa, you must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available."); Dep't of State, 9 FAM 504.7-2 (stating Department policy is to resolve fiancé(e) visa applications within 30 days). Whatever agency policy may be does not negate that Vang sufficiently alleges the agency did not take such action and did not reach a final decision here.

Vang's complaint sufficiently alleges that the consular officer has not "conclude[d] [the] matter" of whether to "issue the visa [or] refuse the visa." 5 U.S.C. § 555(b); 22 C.F.R. § 41.121(a). Thus, the doctrine of consular nonreviewability does not bar Vang's unreasonable delay claims. The Defendants' motion to dismiss on grounds of consular nonreviewability (ECF No. 8 at 1) is denied.

### 4.3 12(b)(6) Failure to State a Claim

#### 4.3.1 Mandamus Relief

District courts have the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). For the court to grant the writ, a plaintiff must demonstrate: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is

available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)).

As the court noted in *Ebrahimi v. Blinken*, "[i]n this case, the third element is determinative, for the court may grant [the plaintiff] the same remedy—compelling the adjudication of [the visa] application—via injunctive relief under the APA." 2024 WL 2020038, at *8; *see also* 5 U.S.C. § 706(1). "[W]here relief sought via mandamus is duplicative of that sought under the APA, the court must dismiss the petition for writ of mandamus." *Ebrahimi*, 2024 WL 2020038, at *8 (collecting cases finding same). Because Vang may (and does) seek to compel the same action under the Administrative Procedure Act as he seeks to compel via mandamus, the court dismisses Vang's claim for a writ of mandamus (ECF No. 1 at 6-7) as duplicative.

### 4.3.2 Administrative Procedure Act – Unreasonable Delay

The Administrative Procedure Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A plaintiff is entitled to relief under § 706(1) if he "asserts an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64. Consular officers must "issue … [or] refuse the visa" and "conclude [the] matter" "within a reasonable time." 22 C.F.R. § 41.121(a); 5 U.S.C. § 555(b). This imposes a nondiscretionary duty on consular officers to conclude visa adjudications and, as explained above, Vang sufficiently alleges the agency failed to do so.

Defendants argue that Vang fails to state a claim for unreasonable delay because consular officers have no duty to re-adjudicate Bayouli's visa application. (ECF No. 9 at 23-27.) This argument does not withstand the court's determination that Vang plausibly alleged the consular officer has not concluded its adjudication of Bayouli's visa application.

Next, Defendants argue Vang cannot state a claim because there has not been an unreasonable delay. (*Id.* at 27-32.) Defendants contend the court should use the analysis set forth in *Telecommunications Research and Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), to find there has been no unreasonable delay. (*Id.* at 27.)

Vang contends *TRAC* is not an appropriate analysis for immigration cases concerning visa adjudications because there is insufficient evidence in the administrative record to conduct the analysis. (ECF No. 10 at 22-23.) Vang further contends application of the *TRAC* analysis is inappropriate at the motion to dismiss stage. (*Id.* at 22-25.) Alternatively, Vang contends the *TRAC* factors favor finding unreasonable delay. (*Id.* at 25-29.)

While the Seventh Circuit has not formally endorsed the *TRAC* analysis, *TRAC* usually guides courts' analyses of unreasonable delay claims, including in visa adjudication matters. *See Ebrahimi*, 2024 WL 2020038, at *9; *see also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts

can apply to unanswered rulemaking petitions."); *Zadeh*, 2024 WL 2708324, at *9-11 (applying *TRAC* factors to unreasonable delay claim). Courts frequently consider the *TRAC* analysis at the motion to dismiss stage. *Ebrahimi*, 2024 WL 2020038, at *9-10 (collecting cases). However, "[a] claim of unreasonable delay is necessarily fact dependent and … sits uncomfortably at the motion to dismiss stage[;]" courts thus "should not typically … resolve[] [the matter] at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (considering *TRAC* factors).

At the motion to dismiss stage, courts consider the *TRAC* analysis not to decide whether there has been an unreasonable delay but to decide "whether a plaintiff has plausibly alleged a claim of unreasonable delay." *Ebrahimi*, 2024 WL 2020038, at *10 ("[T]he court agrees with defendants… that courts may, of course, undertake such an analysis, just as they undertake plausibility analyses with respect to all sorts of elements of all sorts of claims.").

The *TRAC* analysis considers that:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80 (citations omitted). These factors are not "ironclad," but "provide[] useful guidance in assessing claims of agency delay." *TRAC*, 750 F.2d at 80.

Together the first and second *TRAC* factors analyze whether there is "sufficient rhyme and reason to explain the Government's response time." *Ebrahimi*, 2024 WL 2020038, at *11 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998395, at *7 (D.D.C. Dec. 20, 2021)).

Many courts consider the first *TRAC* factor to be the most important. *See Ebrahimi*, 2024 WL 2020038, at *11 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)); *Lee*, 2024 WL 639635, at *5. Where congress has not provided "'a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable' of its proceedings 'is entitled to considerable deference.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983)). "Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Trump*, 585 U.S. at 705 ("The upshot of our cases in this context is clear: 'Any rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be

adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained.'" (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976))).

There is no congressionally mandated timeline for resolving visa adjudications. *See Zagnoon v. Blinken*, No. 23-cv-629, 2023 WL 7279295, at *3 (W.D. Wis. Nov. 3, 2023) (citing *Poursohi v. Blinken*, No. 21-cv-01960, 2021 WL 5331446, at *7 (N.D. Cal. Nov. 16, 2021); *Tekle v. Blinken*, No. 21-cv-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)). Vang argues that there is, however, "other indication of the speed with which [Congress] expects the agency to proceed." *TRAC*, 750 F.2d at 80; (ECF No. 10 at 26.) Vang first contends that 8 U.S.C. § 1571(b) provides a visa-adjudication timeline of 180 days. (ECF No. 10 at 26-27.) Section 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b); *see also* 8 U.S.C. 1572(2) ("The term 'immigration benefit application' means any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act.").

The language "it is the sense of congress" indicates that this provision is "precatory and not binding." 8 U.S.C. § 1571(b); *Ameer v. Schofer*, No. 23-cv-3066, 2024 WL 2831464, at *6 (D.D.C. June 4, 2024) (quoting *Palakuru v. Renaud*, 521 F. Supp. 46, 51 (D.D.C. 2021)); *see also Lee*, 2024 WL 639635, at *6 ("§ 1571(b) is aspirational, rather than

mandatory."). Thus, § 1571(b) does not supply a "rule of reason" for visa adjudication timing. *TRAC*, 750 F.2d at 80.

Vang also contends that a memo from the Secretary of State provides a visa-adjudication timeline of 30 days. (ECF No. 10 at 27.) The memo advises consular officers to "bear the following in mind as [they] prioritize [their] work": "Consistent with Congressional direction, post should strive to process … nonimmigrant K visa applications of fiancés of U.S. citizens within 30 days." Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021); *see also* Consolidated Appropriations Act, Pub. L. No. 106-113, § 237, 113 Stat. 1501, app. G at 1501A-430 (2000) ("It shall be the policy of the Department of State to process immigrant visa applications of … nonimmigrant K-1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents …."); Dep't of State, 9 FAM 504.7-2 ("[L]egislation require[s] that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information…. The Department expects all IV units to strive to meet the 30[]-day requirement[].").

The Secretary of State memo is not a binding "[c]ongress[ional] … mandate … in the enabling statute." *TRAC*, 750 F.2d at 80. Its timeline is "aspirational, not mandatory." *Zagnoon*, 2023 WL 7279295, at *3. Thus, the Secretary of State memo also does not supply a "rule of reason" for visa adjudication timing. *TRAC*, 750 F.2d at 80.

While the authorities Vang cites are non-binding, the court is "mindful that congress has expressed that immigration-benefit applications should be adjudicated within six months," *Barrios Garcia*, 25 F.4th at 454, and that department policy is to "strive to process" fiancé(e) visa applications within 30 days. Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021). The unreasonable delay analysis, however, "does not rise and fall" on those timelines. *Barrios Garcia*, 25 F.4th at 454.

"When there is no 'congressionally supplied timeframe, courts typically look to case law for guidance.'" *Ebrahimi*, 2024 WL 2020038, at *11 (quoting *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021)). While there are no bright-line timelines in this case-specific context, "courts 'have generally found that immigration delays in excess' of five years are unreasonable, 'while those between three and five years are often not unreasonable.'" *Id.* (quoting *Orozco v. Blinken*, No. 22-cv-5134, 2023 WL 4594377, at *4 (N.D. Ill. July 18, 2023)). "The two-year mark" is typically considered "'the lowest threshold for a finding of unreasonable delay' in visa processing cases." *Id.* (quoting *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *2 (D.D.C. Feb. 16, 2022)), *see also Khazaei*, 2023 WL 6065095, at *6 ("Absent a shorter statutory timeline, a delay of less than a year is not unreasonable.").

Vang has waited a year for a decision on Bayouli's visa application. (ECF No. 1, ¶¶ 19, 22.) While a year exceeds the timeline that the Secretary of State and Congress suggest consular officers should strive to resolve applications within, the delay is not so

long as to warrant judicial intervention. Vang cites no cases where the court found such a "delay" unreasonable. (ECF No. 10 at 25-27.) The relatively short amount of time passed weighs strongly in favor of the government.

As for the third and fifth *TRAC* factors, Vang alleges he is suffering significant emotional, personal, and financial hardship from the delay in adjudicating his fiancée's case. (ECF No. 1, ¶¶ 7-9.) He alleges the separation has caused him anxiety, depression, and suicidal thoughts; it has delayed his ability to start a family with Bayouli; and he fears his chances of finding another love, considering he is mute and Bayouli deaf. (*Id.,* ¶ 7.) He has difficulty sleeping at night and concentrating at work, and the couple struggle to have quality time together. (*Id.,* ¶ 8.) Vang also suffers financially from traveling to visit Bayouli and sending her support money. (*Id.,* ¶ 9.)

These hardships are not unlike those of all visa applicants. *See Zadeh,* 2024 WL 2708324, at *10 (collecting cases). Thus, the third and fifth *TRAC* factors only slightly favor Vang. *See id.* at *10-11 (finding the "factors tilt only slightly in [plaintiffs'] favor" because "[o]ther applicants are dealing with like circumstances"); *Mohammad v. Blinken,* 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021) ("The Court is not unsympathetic to [plaintiff's] difficulties. But the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications.").

The fourth *TRAC* factor considers "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d at 80. Defendants contend

a court order to adjudicate Bayouli's application would prioritize her application "ahead of similarly situated applicants," making it a "zero-sum game." (ECF No. 9 at 30.) Vang responds that there is no evidence of how Defendants process applications, but that applications are not, and cannot be, resolved on a "first-in-first-out basis." (ECF No. 10 at 28.)

Some courts find factor four to be of great weight, concluding that relief is improper "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Lee*, 2024 WL 639635, at *6. Others find it is unclear how the agency prioritizes resolving applications. *See Barrios*, 25 F.4th at 453 (rejecting a first-in-first-out theory). Indisputably, there is serious backlog for resolving visa adjudications. *See Zagnoon*, 2023 WL 7279295, at *3; U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Interview-Ready Backlog Report* (Sept. 2024), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (noting 385,800 eligible applicants are still waiting to have an interview scheduled). But at the motion to dismiss stage the court lacks sufficient evidence to assess the agency's adjudication process and its effect on other applicants. *See Al-Gharawy*, 617 F. Supp. 3d at 19 ("[T]he Court does not have before it any evidence indicating whether such a reordering would occur here."); *Barrios*, 25 F.4th at 454 ("At the Rule 12(b)(6) stage, … [d]iscovery is warranted to better assess 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the

agency.'" (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.D. Cir. 2003))).

The sixth *TRAC* factor states that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" 750 F.2d at 80. There is currently no evidence of agency impropriety; this factor thus favors neither party.

The one-year period that has passed does not give rise to an unreasonable delay claim where Vang does not allege he suffered any extreme, unique harm. Thus, even though some of the *TRAC* factors slightly support Vang's claim that there has been an unreasonable delay in the processing of Bayouli's visa application, Vang has failed to plausibly allege a claim for unreasonable delay under the Administrative Procedure Act. Accordingly, his claim under the Administrative Procedure Act is dismissed.

### 4.4 Due Process

Lastly, Vang alleges the Defendants' delay in adjudicating Bayouli's visa application is a violation of his Fifth Amendment procedural and substantive due process rights. (ECF No. 1, ¶¶ 37-41.) Defendants argue that Vang's constitutional rights have not been violated because he has no liberty or property interest in his fiancée's application.

(ECF No. 9 at 33.) Vang briefly responds that he has a right to have the federal law equitably enforced and has a fundamental right to family unity. (ECF No. 10 at 29-30.)

The Due Process Clauses of the Fifth and Fourteenth Amendments "include a substantive component, which forbids the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993).

The Supreme Court recently held in *Department of State v. Muñoz*, 144 S. Ct. 1812, 1821 (2024), that U.S. citizens do not have "a fundamental liberty interest in [their] noncitizen spouse being admitted to the country." "[T]he theory that individuals have 'a fundamental right to reside in the United States with [their] non-citizen relatives ... runs headlong into Congress' plenary power over immigration.'" *Gilani v. Bitter*, No. 23-cv-3288, 2024 WL 1839455, at *5 (C.D. Ill. Apr. 26, 2024) (quoting *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018)). "[T]he generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." *Gebhardt*, 879 F.3d at 988. Vang's claim that his "right to family unity" was violated by the adjudication delay preventing him from residing in the United States with his fiancée thus fails. Accordingly, Vang fails to state a claim for infringement of his substantive due process rights.

The Supreme Court also rejected a plaintiff's claim that she had "a procedural due process right in *someone else's* legal proceeding." *Muñoz*, 144 S. Ct. at 1825 (emphasis in original). Even if such a right existed, it would not be violated here. "[T]he Supreme Court 'long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.'" *Gilani*, 2024 WL 1839455, at *6 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). Thus, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). "[B]y assuring that Defendants comply with their statutory duties, the Court guarantees due process." *Al-Gharawy*, 617 F. Supp. 3d at 20. Vang thus fails to state a claim for infringement of his procedural due process rights.

### 5. Conclusion

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (ECF No. 8) for failure to state a claim for a writ of mandamus relief, failure to state a claim under the Administrative Procedure Act, and failure to state a claim for a Due Process violation is

**granted**. Vang's claims are dismissed with prejudice for 12(b)(6) failure to state a claim.

The Clerk shall enter judgment accordingly.

      Dated at Milwaukee, Wisconsin this 2nd day of October, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge